UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF INDIANA
HAMMOND DIVISION

JOSHUA D. GUERRIN,

    Plaintiff,

    v.

IBIN MANAGEMENT, LLC,

    Defendant.

Case No. 2:23-CV-105-GSL

## OPINION AND ORDER

This matter is before the Court on IBIN's Motion for Summary Judgement Pursuant to Fed. R. Civ. P. 56 [DE 58] filed on November 15, 2024. For the reasons below, the Court grants in part and denies in part the motion.

### PROCEDURAL BACKGROUND

This case began when Plaintiff Joshua D. Guerrin filed a complaint in the Western District of Michigan on January 24, 2023. The case is an action for damages against Defendant IBIN Management, LLC, under the Fair Credit Reporting Act (FCRA) for unauthorized use of Plaintiff's credit report. On March 24, 2023, the case was received in this district on transfer and was assigned to Judge Theresa Springmann.

Judge Springmann decided a motion to dismiss in Plaintiff's favor and denied a motion to reconsider that ruling, and the case proceeded to discovery. The case was reassigned from Judge Springmann to the undersigned on August 30, 2024, and discovery closed on October 1, 2024.

Defendant moved for summary judgment on November 15, 2024. Plaintiff responded on December 13, 2024, and Defendant replied on January 10, 2025. The Court held a hearing on

Defendant's Motion for Summary Judgment on February 19, 2025. The motion is now ripe for the Court's adjudication.

## LEGAL STANDARD

Summary judgment is appropriate "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). The movant "bears the initial responsibility of informing the district court of the basis for its motion and identifying those portions of" the evidence that "demonstrate the absence of a genuine issue of material fact." *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). To survive a properly supported motion for summary judgment, "the nonmoving party must present evidence sufficient to establish a triable issue of fact on all elements of its case." *McAllister v. Innovation Ventures, LLC*, 983 F.3d 963, 969 (7th Cir. 2020).

In deciding a motion for summary judgment, a court may "not weigh conflicting evidence, resolve swearing contests, determine credibility, or ponder which party's version of the facts is most likely to be true." *Stewart v. Wexford Health Sources, Inc.*, 14 F.4th 757, 760 (7th Cir. 2021). Instead, a court's only task is "to decide, based on the evidence of record, whether there is any material dispute of fact that requires a trial." *Id.* (internal citation omitted). If there is no genuine dispute of material fact, then summary judgment is appropriate, and the movant is entitled to judgment as a matter of law. *Id.*

## MATERIAL FACTS

On or about May 15, 2022, Mr. Guerrin contacted IBIN about leasing an apartment. Weng Decl. ¶ 5, ECF No. 59-2. On May 15, 2022, Plaintiff authorized and paid for a Tenant Background Report (hereafter, the "report") from a third-party provider, Tenant Background Search. *Id.* ¶ 6. Defendant's principal, Ms. Weng, declared under penalty of perjury that IBIN

2

uses a third-party provider to ensure compliance with the FCRA. Weng Decl. ¶ 7. Ms. Weng also declared that Mr. Guerrin "voluntarily provided" his report to IBIN to evaluate his lease eligibility. *Id.* ¶ 9. On the other hand, Ms. Weng told the Office of the Indiana Attorney General (OAG) that it was IBIN that "pulled Mr. Guerrin's credit score." Pl.'s Ex. B at 1, ECF No. 62-2. The report itself indicates that it was "prepared for" IBIN. Def.'s Ex. 2, ECF No. 59-3. It is undisputed that IBIN maintains its own login credentials with Tenant Background Search.

The report revealed a credit score of 538, which equals to a credit score of "D," and 22 separate collection accounts. Def.'s Ex. 2; Weng Decl. ¶ 10. The report also stated that "[a]ccording to accepted industry standards over the next 2 years, there will be a Delinquency Rate of 71%." Def.'s Ex. 2.

Ms. Weng declared that, based on this information, IBIN declined to enter into a lease agreement with Mr. Guerrin. Weng Decl, ¶ 12. Ms. Weng also declared that Mr. Guerrin contacted IBIN and offered to pay a larger security deposit and sign a month-to-month lease instead of a 12-month lease. *Id.* ¶ 13. In contrast, Mr. Guerrin affirmed under penalties of perjury that IBIN changes lease terms "after you have already paid $100 for the credit check and been 'approved'." Mot. Dismiss Ex. 1 at 3, ECF No. 17-1. Ms. Weng told the OAG that IBIN "only emailed [Mr. Guerrin] the link and Tenant Background Search charged him the $39.99 directly after he did the credit and background check on his own" and denied a cost of $100 for the report. Pl.'s Ex. B at 2, ECF No. 62-2.

These altered lease terms offered IBIN additional protection in the event of a default by Mr. Guerrin, and IBIN agreed to lease the apartment to Mr. Guerrin based on these revised terms. Weng Decl. ¶ 14. IBIN sent the revised lease agreement to Mr. Guerrin, which he signed on May

16, 2022. *Id.* ¶ 16. Mr. Guerrin subsequently defaulted on the lease, and his lease was terminated on August 31, 2022. *Id.* ¶ 17.

On or about September 16, 2022, Mr. Guerrin submitted an online consumer complaint to the OAG's Consumer Protection Division. *Id.* ¶ 18; Mot. Dismiss Ex. 1 at 2–3. On October 17, 2022, the OAG, through its investigator Tyra Lee, sent correspondence to IBIN (hereafter, the "investigative letter") enclosing a copy of the consumer complaint. Weng Decl. ¶ 19; Mot. Dismiss Ex. 1, at 1. Mr. Guerrin alleged "false and fraudulent advertising" by IBIN, including increasing the rate by $90 per month and changing the lease terms after paying for the report and being approved. Weng Decl. ¶ 20; Mot. Dismiss Ex. 1, at 3. As part of the complaint form, Mr. Guerrin "consent[ed] to the Consumer Protection Division obtaining or releasing any information in furtherance of the disposition of this complaint." Mot. Dismiss Ex. 1, at 3.

The investigative letter advised IBIN that Indiana law required the OAG to investigate and mediate Mr. Guerrin's consumer complaint. *Id.* at 1. The OAG sought IBIN's explanation of the circumstances complained of and "a copy of all documents relating to the complaint." *Id.* IBIM's written response was required within fifteen business days. *Id.*

As part of the consumer complaint process, the OAG asks the investigation's respondent to provide a response addressing the allegations under Indiana Code § 4-6-9-4(a)(3). OAG Subpoena Resp. ¶ 6, ECF No. 59-4. The OAG is empowered with authority, under Indiana Code §§ 4-6-3-3 and 4-6-12-7, to obtain any information related to the subject of an investigation that is not otherwise privileged. This includes the ability to obtain credit scores. *Id.* ¶ 7.

On November 3, 2022, IBIN provided its written response to the investigative letter, denying the allegations in Mr. Guerrin's consumer complaint and enclosing a copy of the lease and the credit report. Weng Decl., ¶ 25. IBIN stated in its response that "[w]e want everyone to

sign a 12 months [*sic*] lease with us. However, when we pulled Mr. Guerrin's credit score, we found his credit score was very low at 538 and that he has 22 collections." Pl.'s Ex. B at 1. Ms. Weng declared that the lease and report were provided to the OAG solely to explain why the terms of the lease transaction had changed, and not to paint Mr. Guerrin in a negative light. *Id.* ¶ 26.

IBIN reviewed and relied upon the signed, written consent contained in Mr. Guerrin's consumer complaint when it forwarded IBIN's response and supplied the report to the OAG. Weng Decl. ¶¶ 23, 29-30. Ms. Weng declared that IBIN disclosed the information to OAG's investigator because IBIN had reason to believe the OAG intended to use the information "in connection with the lease transaction involving [Mr. Guerrin] and involving the extension of credit to, or review or collection of an account of, [Mr. Guerrin]. *Id.* ¶ 31. Ms. Weng also declared that IBIN disclosed the information to OAG's investigator because IBIN had reason to believe the OAG had a legitimate business need for the information. *Id.* ¶ 32.

## ANALYSIS

Plaintiff alleges that Defendant violated the FCRA when Defendant provided materials, including the report, to the OAG in response to Plaintiff's consumer complaint. "The FCRA imposes statutory prohibitions and obligations, including that a person shall not use or obtain a consumer report without a permissible purpose." *Persinger v. Sw. Credit Sys., L.P.*, 20 F.4th 1184, 1190 (7th Cir. 2021) (citing 15 U.S.C. § 1681b(f)). There is a private right of action for violations of the FCRA. *Id.* at 1194. An injured consumer can recover actual damages for negligent FCRA violations and actual or statutory damages—plus punitive damages in the court's discretion—for willful FCRA violations. *Id.*; 15 U.S.C. § 1681n(a).

### A. Procurement of the Credit Report

Defendant first argues that summary judgment should be granted in its favor because Plaintiff procured the report himself. This argument fails because there is a genuine factual dispute on this matter. Defendant presented evidence in the form of Ms. Weng's declaration that Plaintiff "voluntarily provided" the report, and Plaintiff presented evidence in the form of Ms. Weng's response to the OAG that it was Defendant who "pulled" the credit score. Plaintiff also presented evidence that Defendant has login credentials for Tenant Background Search, and that advertising showed the search to cost $39.99, but the cost to Defendant's tenants was $100. The evidence also shows that Defendant denied the accusation that the search cost $100. These competing sets of facts, both supported by evidence, preclude summary judgment in Defendant's favor on this argument.

The Court also notes, as Plaintiff has identified, that the FCRA covers "use" of a consumer report in addition to the obtainment of that report. *See* 15 U.S.C. § 1681b(f). As there is evidence that Defendant used the report by sending it to the OAG (a fact Defendant does not dispute), this is another reason why summary judgment is inappropriate on this argument.

### B. Permissible Purpose

Defendant also asserts that summary judgment should be granted in its favor because it had a permissible purpose: providing a copy of Plaintiff's report to the OAG. Plaintiff counters that even if Defendant had a permissible purpose the report needed to be certified for that purpose. Under 15 U.S.C. § 1681b(f), a person's use or acquisition of a consumer credit report must be both obtained for an authorized purpose and certified in accordance with 15 U.S.C. § 1681e. The requirement is for "prospective users of the information [to] identify themselves,

6

certify the purposes for which the information is sought, and certify that the information will be used for no other purpose." 15 U.S.C. § 1681e(a).

As the movant, it was Defendant's responsibility to provide the basis for the request for summary judgment. Defendant's provided basis—that there was a permissible purpose for the report's disclosure—is necessary but not sufficient to show that the Defendant did not violate the FCRA. Accordingly, even if Defendant is correct on its presented argument, it has not shown that it is entitled to summary judgment as a matter of law because it is silent on the certification requirement. Because this basis is legally insufficient, this argument fails.

### C. Willfulness

Defendant maintains that, even if it violated the FCRA, Plaintiff cannot show that the violation was willful. For FCRA violations, willful conduct encompasses both knowing and reckless violations of the law. *Safeco Ins. v. Burr*, 511 U.S. 47, 57 (2007). Recklessness in general involves an "action entailing 'an unjustifiably high risk of harm that is either known or so obvious that it should be known.'" *Id.* at 68 (quoting *Farmer v. Brennan*, 511 U.S. 825, 836 (1994)). "A company recklessly violates the FCRA when it commits 'a violation under a reasonable reading of the statute's terms,' and its erroneous reading '[runs] a risk of violating the law substantially greater than the risk associated with a reading that was merely careless.'" *Persinger*, 20 F.4th at 1195 (quoting *Safeco Ins.*, 551 U.S. at 69). In *Safeco*, the Supreme Court decided that an erroneous reading that "was not objectively unreasonable . . . [fell] well short of" being reckless.[1] 551 U.S. at 70.

---

[1] Defendant asserts, "*Safeco* makes clear that a genuinely held, but ultimately mistaken belief, that use of a report is, in fact, permissible under § 1681b(f) does not and cannot qualify as a willful or reckless violation of the FCRA." Rep. at 5, ECF No. 67. In support, Defendant provides only a general citation to *Safeco* without citation to any specific page or section of the opinion. The *Safeco* Court, however, did not grant amnesty for all mistakes about the FCRA so long as they are premised on genuinely held beliefs. Instead, the Court found that the mistake at issue in *Safeco* was not reckless because "Safeco's reading of the statute, albeit erroneous, *was not objectively unreasonable*." *Safeco*, 551 U.S. at 69 (emphasis added). Elsewhere in the briefing, Defendant quotes a case out of

Plaintiff argues that, given the dictates of the FCRA, Defendant should have only informed the OAG that Plaintiff's credit score was the reason for the changes to Plaintiff's lease instead of submitting the full report. Plaintiff contends that the reasonable inference was that the report was intended to disparage Plaintiff and paint him in a bad light before the OAG. Plaintiff further asserts that, when viewing the facts in his favor, the evidence "illustrates the more than reasonable inference that Defendant ultimately went far beyond what was necessary to properly and sufficiently respond to the AG's request for information, and in so doing used Plaintiff's consumer report in a manner inconsistent and prohibited by the FCRA." Resp. at 6, ECF No. 61.

Also, Defendant's principal, Ms. Weng, declared under penalty of perjury that IBIN uses a third-party provider to ensure compliance with the FRCA. It is reasonable to infer from this that Defendant knew it needed to comply with the FCRA.

On Defendant's side, the evidence shows that Plaintiff initiated and authorized the OAG's investigation of Plaintiff's complaint and that Plaintiff consented to the OAG's Consumer Protection Division "obtaining or releasing any information in furtherance of the disposition of this complaint." Mot. Dismiss Ex. 1, at 3. Also, the OAG sought from Defendant "a copy of all documents relating to the complaint." *Id.* at 1. There is also evidence to indicate that the lease and report were provided to the OAG solely to explain why the terms of the lease transaction had changed, that Defendant relied upon the written consent in Plaintiff's consumer complaint when forwarding the report, and that Defendant disclosed the report to the OAG because Defendant had reason to believe the OAG had a legitimate business need for the information.

---

the Eastern District of Michigan for the proposition that mistakes are not reckless or willful under the FCRA, but that case carries no precedential authority in this district. *See* Mem. at 7, ECF No. 59 (quoting *Daniel v. Goodyear Tire/CBSD*, No. 15-11479, 2017 WL 9472892, at *4 (E.D. Mich. July 27, 2017)).

As discussed above, the FCRA requires both a permissible purpose and a certification of that purpose in order to lawfully use or obtain a credit report. Defendant contends that the OAG's authority to obtain credit scores, Plaintiff's written consent to the OAG obtaining information, and the Indiana Code's protection of the confidentiality of disclosures "track" the certification requirements of 15 U.S.C. § 1681e to "identify [the user(s) of the report], certify the purposes for which the information is sought, and certify that the information will be used for no other purpose." According to Defendant, this "tracking" of the certification requirement makes this disclosure reasonable without being certified for the purpose.

At this procedural phase, the evidence and the reasonable inferences that can be drawn therefrom are viewed in the light most favorable to Plaintiff. Under the *Safeco* analysis, two prongs must be met, the "reasonable reading" prong and the "substantially greater than careless" prong. On the evidence provided, a reasonable jury could determine that it was objectively unreasonable for Defendant to believe that it could ignore the certification requirement in § 1681b(f)(2).[2] There is no evidence that any attempts were made to review the certification to see if it covered the circumstances present here, nor is there any citation to any legal opinion, argument, or other document espousing Defendant's view that FCRA certification requirement can be ignored if the circumstances of the disclosure assure confidentiality.

Similarly, a reasonable jury could find that Defendant, by reading the FCRA as it did, ran a risk of violating the statute that was substantially greater than the risk associated with a merely careless reading. In addition to the inference that Defendant knew it had to comply with the

---

[2] It is an open question in the Seventh Circuit whether willfulness under the FCRA must be determined by the Court and not by a jury. *See Jeffers v. First Nat'l Bank of Omaha*, 679 F. Supp. 3d 757, 761–63 (providing an in-depth discussion of the issue). Plaintiff argues that the willfulness or recklessness determination should be given to the jury. Defendant does not argue that it is a question of law that the Court must resolve. Finding that Defendant has waived argument to the contrary, the Court treats willfulness as an issue that may be given to the jury to resolve.

FCRA, the statute on its face requires certification, and, again, Defendant has not identified any entity other than itself which believes that certification is not required by the circumstances under which Defendant disclosed Plaintiff's report. The Court will not take this question away from the jury. Accordingly, summary judgment on the issue of the willfulness of Defendant's conduct is not appropriate.

### D. Negligence

Finally, Defendant argues that Plaintiff cannot establish any actual damages to support a negligent violation of the FCRA. By statute, actual damages are necessary to the success of a claim for a negligent FCRA violation. 15 U.S.C. § 1681*o*(a); *see also Persinger*, 20 F.4th at 1194. "Nonpecuniary harms, including reputational damage and emotional distress, may also follow an FCRA violation, though these harms must be described in 'reasonable detail'—conclusory statements are insufficient." *Id.* There must also be a causal link between the harm and FCRA violation. *Id.*

In *Persinger*, the plaintiff conceded that invasion of privacy was the only harm caused by the FCRA action and stated that the invasion of her privacy caused stress and anger. *Id.* The Seventh Circuit found that she had not supported her claim for actual damages. *Id.* Here, Plaintiff argues even less: "Defendant shared extensive private information about Plaintiff with a third party in an impermissible and unlawful manner, in turn causing actual damage to Plaintiff's privacy interests." Resp. at 11, ECF No. 61. Plaintiff provides no further evidence or argument. This is precisely the type of conclusory statement that *Persinger* deems insufficient. The Court grants summary judgment for Defendant on the theory of a negligent FCRA violation.

**CONCLUSION**

Based on the above, the Court hereby **GRANTS in part** and **DENIES in part** IBIN's Motion for Summary Judgement Pursuant to Fed. R. Civ. P. 56 [DE 58]. The sole claim of the complaint survives, but only on a theory of a willful FCRA violation. Plaintiff may not pursue his case on the theory of a negligent FCRA violation.

SO ORDERED.

ENTERED: September 19, 2025

/s/GRETCHEN S. LUND
Judge
United States District Court